UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SEAN CHAMBERLAIN, and PAMELA ANDRAL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANGEL SALAZAR DESIGN LLC, and ANGEL SALAZAR,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Sean Chamberlain ("Chamberlain") and Pamela Andral ("Andral") (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated persons, by and through their undersigned counsel, allege upon personal knowledge as to themselves and upon information and belief as to other matters (which is based on, among other things, their experiences at Defendants' facility, review of Defendants' records, conversations with Defendants' employees and investigation of their counsel), as follows:

<u>**NATURE OF ACTION**</u>

1.      Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former hourly paid and non-exempt employees of Defendants Angel Salazar Design LLC ("ASD") and Angel Salazar ("Salazar") (collectively, "Defendants"), who were improperly misclassified as independent contractors instead of employees in violation of applicable law ("Hourly Employees").

2.      Defendants operate ASD, a premium floral design company headquartered in New York City.  ASD, which was founded by Salazar in or around 2018, designs bespoke custom floral arrangements and installations for a wide range of high-end customers and premium brands,

including Tiffany and Co., Vanity Fair, Armani, Gucci, and many more. Salazar, who is the CEO, founder, and Principal Floral Designer of ASD, is well-known in the floral industry and through social media, with over 26,500 Instagram followers alone.

3.     During the relevant period, Defendants have employed at least 100 Hourly Employees, including Plaintiffs. By virtue of their management and control over the wages and work of Plaintiffs and the Hourly Employees, each of ASD and Salazar are "employers" of the Hourly Employees under applicable labor law.

4.     As particularized below, Defendants have engaged in illegal and improper wage practices and policies that have deprived Hourly Employees of significant overtime compensation. Specifically, Defendants intentionally and unlawfully misclassified the Hourly Employees as independent contractors, caused such Hourly Employees to routinely work in excess of 40 hours per week, but did not pay any of the Hourly Employees the appropriate overtime rate of one- and one-half times their regular hourly rate. Defendants also routinely improperly delayed the payment of wages to Hourly Employees, sometimes requiring Hourly Employees to wait weeks to be paid.

5.     For these reasons, Plaintiffs bring this action on behalf of themselves and other Hourly Employees to recover unpaid overtime compensation, damages, penalties, and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et seq.*, and New York Labor Law ("NYLL") §§ 191, 195.1, 195.3, 198, and 12 N.Y.C.R.R. § 142-2.2.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. § 216(b).

8.     This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a proposed class action in which: (a) there

are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL state law wage and hour claims because those claims derive from a common nucleus of operative fact.

10.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.

11.     The Court has personal jurisdiction over the Defendants as they are both domiciled in the State of New York.

## **THE PARTIES**

12.     Plaintiff Chamberlain is currently a resident of Crown Heights, New York, and is a former Hourly Employee of Defendants.  Plaintiff was employed by Defendants as a Studio Manager from in or around April 2024 through September 15, 2024.

13.     Plaintiff Andral is a resident of Cambria Heights, New York and is a current Hourly Employee of Defendants.  Plaintiff was hired by Defendants on or about September 7, 2022 as an Administrative Specialist as part of the Administrative Support Team.

14.     ASD is a domestic limited liability company organized and existing under the laws of the State of New York.  ASD maintains its principal place of business at 115 West 28th Street, 5th Floor, New York, NY 10001.

15.     ASD markets itself as a premium floral design company specializing in luxury, hospitality, and special events.  ASD touts an impressive list of high-profile clients, including Gucci, Adidas, CNN, Alexander McQueen, Dolce & Gabbana, and many others.

16.     Salazar is the founder, owner, CEO, and Principal Floral Designer of ASD.

17.     Throughout the relevant time period, Defendants have employed at least 100 current and former Hourly Employees.

## FACTUAL ALLEGATIONS

### A.     Plaintiffs Were Misclassified as Independent Contractors

18.     Plaintiff Chamberlain was hired by Defendants as a Studio Manager in or around April 2024, and informed at the time of her hiring that she would work as an independent contractor during an initial 3-month "probationary period," after which she would be transitioned to a full-time non-exempt hourly employee.  For the first two weeks of her employment, Chamberlain was compensated at the rate of $28.50 per hour.  Thereafter, her rate was increased to $32.50 per hour for the remainder of the "probationary period."  After the "probationary period" concluded, Chamberlain's hourly rate was increased to $35.00 per hour.  However, Chamberlain was never formally hired as an hourly employee of Defendants, and instead at all times throughout her employment, was misclassified as an independent contractor.

19.     Throughout her employment, Chamberlain worked 5 days per week, Monday through Friday.  Her scheduled hours were 8AM to 4PM, although she regularly and routinely worked in excess of her scheduled hours without additional overtime compensation for the hours worked in excess of 40 hours per week.

20.     Indeed, approximately two times per week, Chamberlain worked an additional 2 hours beyond her scheduled hours.  As such, Chamberlain routinely worked approximately 44 hours per week or more.  However, Chamberlain did not receive overtime compensation for any of the hours worked in excess of 40 hours in a week.

21.     By way of example, during the week of May 6, 2024 through May 11, 2024, Chamberlain worked 51.50 hours for Defendants.  However, Chamberlain did not receive any

overtime compensation for the hours worked in excess of 40 hours, and instead was simply paid her regular hourly rate for all hours worked, including the hours worked in excess of 40. Likewise, during the week of August 26, 2024 through August 30, 2024, Chamberlain worked 43 hours and 59 minutes, but was not paid any overtime compensation for the time spent working beyond 40 hours. These are just two of the many examples of weeks in which Chamberlain worked in excess of 40 hours in a week, but was denied overtime compensation at the appropriate overtime rate.

22.     Every aspect of Chamberlain's employment was controlled by Defendants. Indeed, Chamberlain could not exercise any independent discretion or control over her job duties and responsibilities. Rather, Chamberlain was directed by Salazar and other ASD employees as to the specific events and activities she was to work on.

23.     Despite that Chamberlain was performing work as a traditional non-exempt hourly employee, Defendants directed Chamberlain to send "invoices" for the hours she worked for Defendants every two weeks. As directed, Chamberlain submitted "invoices" reflecting the hours she worked for Defendants; however, Defendants did not pay Chamberlain in a timely manner.

24.     Instead, Chamberlain was forced to repeatedly request updates on the status of her outstanding payments, and would often go days or even weeks without being paid for the time she was working for Defendants.

25.     Throughout her employment with Defendants, which was continuous and uninterrupted, Chamberlain was not employed anywhere else and did not engage in any freelance work for any other entities or individuals. Defendants were well aware of this, and scheduled Chamberlain to work a full schedule so that it was impracticable for her to work elsewhere, including for any competitors of ASD.

26.     The services rendered by Chamberlain as Studio Manager were an integral part of Defendants' business.   Indeed, without Chamberlain's services, ASD would not be able to effectively service its clients.

27.     Plaintiff Andral commenced her employment with Defendants in or around 2022. Initially, Andral was paid $24.00 per hour.  Subsequently, in or around November 2022, Andral's hourly rate increased to $26.00 per hour.  Sometime in or around 2023, Andral's hourly rate increased to $28.00 per hour.

28.     Initially, throughout 2022 and continuing until September 2023, Andral was classified by Defendants as an independent contractor, despite working approximately 50 hours per week for Defendants and despite that Andral had no control or discretion over her job responsibilities or functions.

29.     Specifically, during this period, Andral was scheduled to work Monday through Friday, either from 5AM to 1PM or 6AM to 2PM, although Andral routinely worked in excess of her scheduled hours.   Indeed, nearly every single week throughout her employment, Andral worked at least 10 additional hours per week beyond her scheduled hours.  However, Andral did not receive overtime compensation for any of the hours she worked in excess of 40 hours per week, instead receiving compensation at her regular rate of pay.

30.     By way of example, during the week of October 31, 2022 through November 4, 2022, Andral worked 49 hours for Defendants, including 10 hours on October 31st, 10 hours on November 1st, 10 hours on November 2nd, 9.75 hours on November 3rd, and 9.25 hours on November 4th.  Andral, however, did not receive overtime compensation for the 9 additional hours she worked above and beyond 40 hours, and instead was simply paid her regular hourly rate for all hours that week.

31.     At some point in or around early 2023, Andral's scheduled hours changed to 8AM to 4PM, Monday to Friday; however, she continued to work in excess of her scheduled hours, including approximately 10 or more additional hours per week beyond her scheduled hours. However, Andral did not receive overtime compensation for any of the hours she worked in excess of 40 hours per week, instead receiving compensation at her regular rate of pay.

32.     Andral's primary job responsibilities included, among other things, consolidating Expensify accounts, creating invoices and cost proposals for clients, and assisting with human resource functions such as ensuring that all employees executed a non-disclosure agreement and received their appropriate tax forms.   In other words, Andral performed the functions of a traditional hourly employee.

33.     During this time, just like Chamberlain and other Hourly Employees, Andral was directed to "invoice" Defendants for the hours she spent working.   As directed, Andral would submit "invoices" to Defendants memorializing the hours she worked each work.   Despite timely submitting her "invoices," Defendants did not compensate Andral in a timely manner, oftentimes resulting in delays of numerous days.

34.     During the period Andral was classified as an independent contractor, every aspect of her employment was controlled by Defendants.   Indeed, Andral could not exercise any independent discretion or control over her job duties and responsibilities.   Rather, Andral was directed by Salazar and other ASD employees as to the specific activities she was to perform.

35.     Apparently recognizing that Defendants had misclassified Andral, in or around September 2023, Defendants formally hired Andral as an hourly employee and placed her on regular payroll.   However, Defendants directed Andral not to perform any work in excess of 40 hours per week as Defendants did not want to pay Andral any overtime.

36.    As such, Andral routinely works approximately 40 hours per week for Defendants, Monday through Friday, typically working 9-10 hours per day Monday through Thursday, and an additional 3-4 hours on Friday to ensure she does no work more than 40 hours in a week.

37.    In connection with Andral's formal transition to an on-the-books employee of Defendants, Andral's job responsibilities did not change whatsoever.  She continued to perform the same job functions as when she was classified (improperly) an independent contractor.

38.    Plaintiffs were engaged in essential and integral work on Defendants' behalf during the periods in which they were not properly compensated at the appropriate overtime rate.  Work performed during these periods included the very same job functions and duties they were hired to and routinely performed.  This work was significant, integral, and indispensable to the performance of Plaintiffs' job duties and was predominantly for Defendants' benefit.

39.    In addition to failing to properly compensate Plaintiffs for overtime at the appropriate overtime rate as a result of Defendants' intentional misclassification of Plaintiffs as independent contractors, Defendants also failed to provide Plaintiffs with proper pay rate acknowledgement forms at the commencement of their employment and accurate wage statements with every payment of wages in violation of NYLL §§ 195.1 and 195.3.

40.    Defendants also failed to compensate Plaintiffs in a timely manner as required by NYLL § 198.

41.    Additionally, as a result of Defendants' intentional misclassification of Chamberlain and Andral, Plaintiffs were denied employment benefits they should have been entitled to receive, including unemployment benefits through the New York Department of Labor.

**B.    Other Hourly Employees are Likewise Misclassified as Independent Contractor**

42.    Defendants hired Plaintiffs and all other Hourly Employees, improperly classifying them as independent contractors when, in truth, Plaintiffs and Hourly Employees were non-exempt

hourly employees of Defendants and entitled to overtime compensation at the rate of one- and-one half times their regular hourly rate.

43.    Indeed, other Hourly Employees, just like Plaintiffs, were hired by Defendants as hourly employees, but were intentionally misclassified as independent contractors as part of Defendants' ongoing scheme to avoid paying Hourly Employees at the appropriate overtime rate of one- and one-half times their regular hourly rate.

44.    Other Hourly Employees, just like Chamberlain and Andral, were directed to work for Defendants, who controlled their daily responsibilities and duties, and to submit "invoices" reflecting the hours they spent working for Defendants.  Defendants would then issue payment to these Hourly Employees, albeit oftentimes late, and refuse to correctly compensate Hourly Employees at the applicable overtime rate in violation of applicable law.

45.    Among other things, Hourly Employees were unable to exercise their own business judgment or discretion in carrying out their job duties, were unable to set their own work schedules, were unable to set their own hourly rates and/or pricing, were unable to hire or fire other employees, were unable to discipline other employees, and were unable to pick and choose which customers they would work with.  Instead, Defendants controlled each of these critical functions.

46.    Defendants were well aware that Hourly Employees were misclassified as independent contractors and did so deliberately to avoid paying them at the applicable overtime rate for hours worked in excess of 40 in a week.

47.    Upon information and belief, during the relevant period, Defendants likewise caused certain other Hourly Employees to be converted from "independent contractors" to non-exempt hourly employees, although such Hourly Employees continued to perform the same job activities performed during the period they were misclassified as independent contractors.

48.     Other Hourly Employees, just like Plaintiffs, were similarly not provided proper pay rate acknowledgement forms at the commencement of their employment and accurate wage statements with every payment of wages in violation of NYLL §§ 195.1 and 195.3.

49.     As a result of Defendants' improper misclassification practices, Plaintiffs and Hourly Employees were deprived significant overtime compensation as required by the FLSA and NYLL.

50.     Accordingly, Plaintiffs seek certification of the following classes of Hourly Employees:

> All Hourly Employees who are or were employed by Defendants within three years ("FLSA Collective Class") or six years ("New York Class") preceding the filing of this action and were classified as "independent contractors" by Defendants and not compensated at the rate of one- and one-half times their regularly hourly rate for hours worked in excess of 40 hours in a week.

**C.    Defendants Exercise Control Over Wage Policies and Practices**

51.     Defendants' pay practices and policies were the same for all Hourly Employees, regardless of their job title or duties.

52.     The compensation policies of Defendants are centrally and collectively dictated, controlled, and ratified.  As such, Defendants have the power to control wage policies and practices through their oversight of day-to-day operating procedures, control over Hourly Employee work schedules, ability to determine Hourly Employees' rate of pay, and ability to control record-keeping practices.

53.     Salazar, as the founder and CEO of ASD, dictates the hourly rates of Hourly Employees and exercises oversight and management of their work schedules and work assignments.

54.    By virtue of their positions, roles and conduct as described above, Defendants are joint "employers" under the FLSA and NYLL.

**D.    Defendants Failed to Provide Hourly Employees With Timely And Appropriate Wage Statements and Pay Rate Acknowledgement Forms As Required Under NYLL**

55.    Defendants failed to provide Plaintiffs and Hourly Employees with accurate wage statements at the time of payment of wages, which were required to contain: the dates of work covered by that payment of wages; names of the employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL § 195.3.   Specifically, the wage statements provided to Plaintiffs were inaccurate and incomplete by failing to include, among other things, the correct rates of pay for all hours worked by Plaintiffs.   As a result, Plaintiffs were prejudiced and harmed in their ability to ascertain whether they were, in fact, being paid for all hours worked, resulting in Plaintiffs and Hourly Employees being undercompensated by Defendants for years.

56.    Defendants also failed to provide Plaintiffs and all other Hourly Employees at the time of hiring and when they received a change in their hourly rate of pay, a statement in English and the Hourly Employees' primary language, containing: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employers' main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL § 195.1.   As a result, Plaintiffs were

unable to ascertain whether they were, in fact, being compensated for all hours worked and at the correct rate of pay. The failure to provide Plaintiffs and Hourly Employees with proper pay rate acknowledgement documentation contributed to Defendants' practice and policy of failing to compensate Plaintiffs and Hourly Employees for all hours worked.

## **FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS**

57. The preceding paragraphs are incorporated by reference as if fully set forth herein.

58. Plaintiffs bring this FLSA collective action on behalf of themselves and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, on behalf of the aforementioned FLSA Collective Class.

59. Excluded from the FLSA Collective Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in ASD. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective Class.

60. Plaintiffs are unable to state the exact number of Hourly Employees within the Collective Class without discovery of Defendants' books and records but estimates that the FLSA Collective Class exceeds 100 individuals.

61. Defendants improperly benefitted by failing and refusing to pay the appropriate overtime compensation to Plaintiffs and the FLSA Collective Class members for time worked in excess of 40 hours in a week.

62. Defendants' unlawful conduct has been widespread, repeated and consistent. Moreover, Defendants' conduct was willful and in bad faith and has caused significant damages to Plaintiffs and the FLSA Collective Class.

63.    Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective Class, and, as such, notice should be sent to the FLSA Collective Class.  There are numerous similarly situated, current and former Hourly Employees who have been denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the action.  Those similarly situated Hourly Employees are known to Defendants and are readily identifiable through Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

64.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

65.    Plaintiffs bring this action on their own behalf and as a class action pursuant to Article 9 of New York Civil Practice Law and Rules on behalf of the aforementioned New York Class.

66.    Excluded from the New York Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in ASD. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

67.    Defendants operate one of the most well-known high-end floral design companies in New York City, all-the-while systematically failing and refusing to pay their Hourly Employees the appropriate overtime rate of pay for hours worked in excess of 40 hours in a week.

68.    During the relevant period, Defendants employed at least 100 Hourly Employees. As such, the members of the New York Class are so numerous that joinder of all members in one proceeding is impracticable.

69.      Plaintiffs' claims are typical of the claims of other New York Class members because Plaintiffs were misclassified as independent contractors and deprived overtime at the applicable overtime rate.

70.      Plaintiffs and other New York Class members have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.  Plaintiffs and other New York Class members have been injured in that they have been undercompensated due to Defendants' common policies, practices, and patterns of conduct.

71.      Plaintiffs will fairly and adequately protect the interests of the New York Class.  Plaintiffs have retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiffs and the New York Class.

72.      Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a) Whether Defendants misclassified Plaintiffs and the New York Class as independent contractors;

(b) Whether Defendants failed and/or refused to pay Plaintiffs and the New York Class overtime at the applicable overtime rate for hours worked in excess of 40 hours in a week;

(c) Whether Defendants failed to provide appropriate and accurate pay rate acknowledgement forms and weekly wage statements as required by NYLL §§ 195.1 and 195.3;

(d) Whether Defendants failed to compensate Plaintiffs in a timely manner as required by NYLL § 198;

(e) Whether Defendants engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiff and New York Class members to perform work for Defendants' benefit which was not compensated;

(f) Whether Defendants' policy of failing to pay workers overtime rates for hours worked in excess of 40 hours in a week was instituted willfully or with reckless disregard of the law; and

(g) The nature and extent of class-wide injury and the measure of damage for those injuries.

73.    Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Members of the New York Class are readily identifiable from Defendants' own records.

74.    Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for Defendants.

75.    Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiffs and the New York Class.

76.    Plaintiffs intend to send notice to all members of the New York Class to the extent required by New York C.P.L.R. § 904.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
#### (On Behalf of Plaintiffs and the FLSA Collective Class)

77.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

78.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

79.    At all relevant times, Defendants have employed and continue to employ, Hourly Employees, including Plaintiffs and each of the members of the FLSA Collective Class.

80.    Upon information and belief, Defendants had gross revenues in excess of $500,000.

81.    Plaintiffs consent in writing to be a part of this action pursuant to 29 U.S.C. § 216(b).  Attached hereto as **Exhibits 1-2** are copies of Plaintiffs' Consent to Opt-in Forms. As this case proceeds, it is likely that other individuals will sign consent forms and join as Plaintiffs and opt-ins.

82.    The FLSA requires each covered employer such as Defendants to compensate all non-exempt Hourly Employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

83.    Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiffs and the members of the FLSA Collective Class.

84.    By failing to compensate Plaintiffs and the members of the FLSA Collective Class for overtime compensation, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq.*

85.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

86.    Plaintiffs, on behalf of themselves and members of the FLSA Collective Class, seek damages in the amount of their unpaid overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

87.    Plaintiffs, on behalf of themselves and the FLSA Collective Class, seek recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### New York Labor Law – Unpaid Overtime
### (On Behalf of Plaintiffs and the New York Class)

88.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

89.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to Defendants and protect Plaintiffs and the members of the New York Class.

90.    Defendants have failed to pay Plaintiffs and members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

91.    By Defendants' knowing and/or intentional failure to pay Plaintiffs and the members of the New York Class overtime wages for hours worked in excess of 40 hours per week, they have willfully violated NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

92.     Due to Defendants' violations of the NYLL, Plaintiffs and the members of the New York Class are entitled to recover from the Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

93.     Plaintiffs, on behalf of themselves and the New York Class, seek all liquidated and punitive damages and penalties available under the NYLL.

**THIRD CAUSE OF ACTION**

**New York Labor Law – Violation of the Notice and Recordkeeping Requirements**
**(On Behalf of Plaintiffs and the New York Class)**

94.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

95.     Defendants have failed to provide Plaintiffs and all Hourly Employees with a written notice, in English and in Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL § 195.1

96.     Accordingly, Defendants are liable to Plaintiffs and each Hourly Employee in the amount of $50 for each workday that a violation occurred not to exceed $5,000 per employee, together with costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**

**New York Labor Law – Violation of the Wage Statement Provisions**
**(On Behalf of Plaintiffs and the New York Class)**

97.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

98.     Defendants have not provided Plaintiffs and all Hourly Employees a statement with each payment of wages listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL 195.3.

99.     Accordingly, Defendants are liable to Plaintiffs and each Hourly Employee in the amount of $250 for each workday that a violation occurred not to exceed $5,000 per employee, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

### New York Labor Law – Untimely Payment of Wages
### (On Behalf of Plaintiffs and the New York Class)

100.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

101.    Despite performing work for Defendants as hourly employees, Defendants required Plaintiffs to submit "invoices" reflecting their hours worked, which Defendants would then issue payment to Plaintiffs.

102.    However, Defendants routinely failed to compensate Plaintiffs in a timely manner as required by NYLL § 198.

103.    Oftentimes, Plaintiffs would have to continuously request updates on the status of their payment requests in order to convince Defendants to pay Plaintiffs for the hours they had already worked for Defendants.

19

104.    Accordingly, Defendants are liable to Plaintiffs and each Hourly Employee whose wages were untimely paid, including liquidated damages measures as the full amount of the underpayment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Sean Chamberlain and Pamela Andral, individually and on behalf of the FLSA Collective, seek the following relief:

A.    Designation of this action as a collective action on behalf of the FLSA Collective (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Plaintiff Consent Forms pursuant to 29 U.S.C. § 216(b);

B.    Designation of Plaintiffs Sean Chamberlain and Pamela Andral as the Representatives of the FLSA Collective Class;

C.    Appointment of Plaintiffs' counsel as Lead Counsel for the FLSA Collective Class;

D.    An award of damages to Plaintiffs and the FLSA Collective Class for unpaid overtime wages and lost benefits, to be paid by the Defendants;

E.    An award of costs incurred herein, including expert fees;

F.    An award of attorneys' fees pursuant to 29 U.S.C. § 216;

G.    An award of pre-judgment and post judgment interest, as provided by law;

H.    An award of injunctive relief to prevent against future wage and hour violations; and

I.    All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiffs Sean Chamberlain and Pamela Andral, individually and on behalf of the New York Class, seek the following relief:

A.     Certification of this action as a class action under Rule 23 and the appointment of Plaintiffs' counsel as Lead Counsel for the New York Class;

B.     Designation of Plaintiffs Sean Chamberlain and Pamela Andral as the Representatives of the New York Class;

C.     An award of damages to Plaintiffs and the New York Class for unpaid overtime wages and lost benefits, to be paid by the Defendants;

D.     An award of damages to Plaintiffs and the New York Class for violation of NYLL §§ 195.1 and 195.3.

E.     An award of damages to Plaintiffs and the New York Class for violation of NYLL § 198.

F.     An award of costs incurred herein, including expert fees;

G.     An award of attorneys' fees pursuant to NYLL;

H.     An award of pre-judgment and post-judgment interest, as provided by law;

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in in any way to Plaintiffs and Plaintiffs' employment, to Plaintiffs' causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable

data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, X f/k/a Twitter, Instagram, LinkedIn, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

## NOTICE PURSUANT TO NEW YORK BUSINESS CORPORATIONS LAW § 630

Defendants are hereby put on notice that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, they are hereby notified that Plaintiffs, the FLSA Collective Class and the New York Class intends to charge and hold personally, jointly and severally liable, the ten largest shareholders of ASD for all debts, wages, and/or salaries due and owing to Defendants' employees for services performed by them and Plaintiffs have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: New York, New York
       January 13, 2025

McLAUGHLIN & STERN, LLP

By: */s/ Jason S. Giaimo*
       Jason S. Giaimo
       Brett Gallaway
       Lee S. Shalov
260 Madison Avenue
New York, NY 10016
Telephone: (212) 448-1100
bgallaway@mclaughlin.com
jgiaimo@mclaughlinstern.com
lshalov@mclaughlinstern.com

*Attorneys for Plaintiffs, the FLSA*
*Collective Class and the New York Class*