UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEAN CHAMBERLAIN, and PAMELA ANDRAL, on behalf of themselves and all others similarly situated, | Case No.: 1:25-cv-00274(MKV) |
| Plaintiffs, | |
| v. | |
| ANGEL SALAZAR DESIGN LLC, and ANGEL SALAZAR, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Jason S. Giaimo
Brett R. Gallaway
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, NY 10016
Tel.: (212) 448-1100
jgiaimo@mclaughlinstern.com
bgallaway@mclaughlinstern.com
*Attorneys for Plaintiffs and Proposed Class Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. i

INTRODUCTION .......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................... 2

SUMMARY OF THE SETTLEMENT TERMS ......................................................... 4

    A.    The Settlement Fund ....................................................................................... 4

    B.    Class Members .................................................................................................. 4

    C.    Releases ............................................................................................................ 5

    D.    Allocation Formula .......................................................................................... 5

    E.    Attorneys' Fees, Costs, and Service Awards ................................................... 6

ARGUMENT ................................................................................................................ 6

I.      CLASS ACTION SETTLEMENT PROCEDURE ............................................. 6

II.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................. 8

    A.    Standard for Preliminary Approval .................................................................. 8

    B.    The Settlement is Fair, Reasonable, and Adequate .......................................... 10

          1.    The Class Representatives and Class Counsel Have Adequately Represented the Class .................................................................................. 10

          2.    The Settlement Was Negotiated at Arms'-Length ......................................... 10

          3.    The Relief Provided in the Settlement is Adequate ....................................... 12

                a.    Costs, Risks, and Delay of Trial and Appeal ................................... 12

                b.    Effectiveness of the Proposed Method of Distributing Relief to the Class ................................................................................ 16

                c.    Terms of Any Proposed Attorneys' Fees ......................................... 17

                d.    Any Agreement Required to be Identified Under Rule 23(e)(3) .................................................................................... 17

          4.    Equitable Treatment of Class Members Relative to the Class is Appropriate .............................................................................................. 18

III.     CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE..................... 19

    A.     Numerosity .................................................................................................... 20

    B.     Commonality ................................................................................................. 20

    C.     Typicality ....................................................................................................... 21

    D.     Adequacy of the Named Plaintiffs and Class Counsel ............................... 21

    E.     Certification is Proper Under Rule 23(b)(3) ................................................ 22

        1.     Common Questions Predominate .................................................... 22

        2.     A Class Action is a Superior Mechanism ...................................... 23

IV.     M&S SHOULD BE APPOINTED AS CLASS COUNSEL ........................................... 24

V.      THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS
      ARE APPROPRIATE ........................................................................................... 25

CONCLUSION.................................................................................................................. 26

# TABLE OF AUTHORITIES

## Cases

*Azogue v. 16 for 8 Hosp. LLC*,
    2016 U.S. Dist. LEXIS 111134 (S.D.N.Y. 2016) .................................................. 17

*Ballinger v. Advance Magazine Publishers, Inc.*,
    2014 U.S. Dist. LEXIS 179538 (S.D.N.Y. Dec. 29, 2014) ................................. 15

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2012) ....................................................... 19, 20, 23, 24

*Burgos v. JAJ Cont. Furniture, Inc.*,
    2024 U.S. Dist. LEXIS 214187 (S.D.N.Y. Nov. 25, 2024) ................................. 18

*C.K. v. McDonald*,
    2024 U.S. Dist. LEXIS 30617 (E.D.N.Y. Feb. 22, 2024).................................... 21

*Chang v. Philips Bryant Park LLC*,
    2019 U.S. Dist. LEXIS 185297 (S.D.N.Y. Oct. 23, 2019)................................. 18

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................ 9, 10, 15, 18

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ................................................................................. 20

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ................................................................................. 22

*D'Angelo v. Hunter Bus. Sch., Inc.*,
    2023 U.S. Dist. LEXIS 12344 (E.D.N.Y. Jan. 24, 2023) ......................... 9, 10, 17

*deMunecas v. Bold Food, LLC*,
    2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) ............................11, 14

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ............................................................................... 21

*Farez v. JGR Servs. Inc.*,
    2023 U.S. Dist. LEXIS 22701 (S.D.N.Y. Dec. 21, 2023) ................................. 18

*Felix v. Breakroom Burgers & Tacos*,
    2016 U.S. Dist. LEXIS 30050 (S.D.N.Y. Mar. 8, 2016) ................................... 16

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ..................................................................... 21

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
2012 U.S. Dist. LEXIS 144446, (E.D.N.Y. Oct. 4, 2012)................................................. 14

*Gen. Tel. Co. of the SW. v. Falcon*,
457 U.S. 147 (1982) ........................................................................................................ 20

*Gordon v. Vanda Pharms. Inc.*,
2022 U.S. Dist. LEXIS 169982 (E.D.N.Y. Sept. 15, 2022) ............................................... 16

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968) ............................................................................................ 23

*Henry v. Little Mint, LLC*,
2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) ......................................... 7, 9, 10

*Hernandez v. Merrill Lynch & Co.*,
2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012) ..................................... 8, 15, 23

*In re Am. Intern. Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ............................................................................................ 22

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................................ 13, 18

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) ............................................................................................ 21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) .............................................................................................. 19

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)................................................................................. 9

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010)............................................................................... 15

*In re Traffic Exec. Ass'n E.R.R.*,
627 F.2d 631 (2d Cir. 1980) .............................................................................................. 9

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ............................................................................................ 22

*Karic v. Major Auto. Cos.*,
2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016)................................................... 13

*LeSser v. Tiaa Bank*,
2020 U.S. Dist. LEXIS 194281 (S.D.N.Y. Oct. 20, 2020)................................................. 16

*Lizondro-Garcia v. Kefi LLC*,
　　300 F.R.D. 169 (S.D.N.Y. 2014) ........................................................................ 9

*Lopez v. Pelhman Pharm., Inc.*,
　　2024 U.S. Dist. LEXIS 11561 (S.D.N.Y. Jan. 23, 2024)..................................11, 12

*Marin v. 310 Bowery Grp. LLC*,
　　2025 U.S. Dist. LEXIS 53631 (S.D.N.Y. Mar. 24, 2025). .......................... passim

*Marisol A. v. Giuliani*,
　　126 F.3d 372 (2d Cir. 1997) ........................................................................... 21

*Martens v. Smith Barney Inc.*,
　　181 F.R.D. 243 (S.D.N.Y. 1998) ..................................................................... 21

*McBean v. City of New York*,
　　228 F.R.D. 487 (S.D.N.Y. 2005) ..................................................................... 23

*Medina v. NYC Harlem Foods Inc.*,
　　2024 U.S. Dist. LEXIS 10892 (S.D.N.Y. Jan. 22, 2024) .................................... 17

*Mikhlin v. Oasmia Pharm. AB*,
　　2021 U.S. Dist. LEXIS 66719 (E.D.N.Y. Jan. 6, 2021) ..................................... 12

*Morris v. Affinity Health Plan, Inc.*,
　　859 F. Supp. 2d 611 (S.D.N.Y. 2012).............................................................. 20

*Newman v. Stein*,
　　464 F.2d 689 (2d Cir. 1972) ........................................................................... 15

*Restrepo v. Monte's Trattoria, Ltd.*,
　　2025 U.S. Dist. LEXIS 44003 (S.D.N.Y. Mar. 7, 2025) .................................... 10

*Reyes v. Altamarea Grp.*, LLC,
　　2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011)................................. 24

*Robidoux v. Celani*,
　　987 F.2d 931 (2d Cir. 1993) ........................................................................... 20

*Sykes v. Harris*,
　　2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016) ................................... 12

*Tyson Foods Inc. v. Bouaphakeo*,
　　136 S. Ct. 1036 (2016) ................................................................................... 22

*Wal-Mart Stores, Inc. v. Visa US.A. Inc.*,
　　396 F.3d 96 (2d Cir. 2005) ........................................................................ 8, 10

*Yang Zeng v. USA QR Culture Indus. Dev. LLC*,
    2023 U.S. Dist. LEXIS 172994 (S.D.N.Y. Sept. 27, 2023)................................................ 12

**Statutes**

29 U.S.C. § 216.......................................................................................................................... 13

New York Minimum Wage Act.................................................................................................... 5

New York Wage Theft Prevention Act ........................................................................................ 5

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... passim

## INTRODUCTION

Plaintiffs Sean Chamberlain and Pamela Andral ("Plaintiffs") commenced this proposed wage-and-hour class and collective action on behalf of themselves and all other similarly situated individuals who currently and/or formerly worked for Angel Salazar Design LLC ("ASD") as independent contractors, alleging that ASD and Angel Salazar (collectively, "Defendants") misclassified Plaintiffs as independent contractors rather than non-exempt hourly employees (the "Class Members").  Plaintiffs and Defendants are pleased to present to the Court for preliminary approval a proposed settlement of this action in the amount of $250,000 (the "Settlement").[1]  In the estimation of Plaintiffs' counsel, the Net Settlement Fund represents approximately 194% of all possible Class Members' compensatory damages (exclusive of statutory penalties and interest) if they were successful on all their claims at trial, a truly excellent result under the circumstances.

As demonstrated below, the proposed Settlement is fair, reasonable and adequate, and satisfies all the criteria for preliminary approval under applicable federal and state law. Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement on the terms set forth in the Agreement; (2) conditionally certify the proposed settlement class, for settlement purposes only, under Federal Rule of Civil Procedure 23(b)(3); (3) appoint McLaughlin & Stern, LLP ("M&S") as Class Counsel; (4) approve the proposed Notice of Settlement attached as Exhibit 2 to the Giaimo Declaration, and direct its distribution; and (5) schedule a fairness hearing for final approval of the Settlement.

---

[1]    Unless otherwise defined, all capitalized terms used herein shall have the same meaning as set forth in the Settlement Agreement and Release dated May 30, 2025 (the "Agreement"), which is attached as Exhibit 1 to the Declaration of Jason S. Giaimo dated May 30, 2025 (the "Giaimo Decl." or "Giaimo Declaration").

## FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2025, Plaintiffs commenced this action by filing a 22-page page class and collective complaint (the "Complaint") generally alleging that Plaintiffs and other Class Members were improperly misclassified as independent contractors by Defendants, rather than employees, and were therefore owed unpaid overtime compensation under the FLSA and New York Labor Law ("NYLL").  *See* Dkt. No. 1.  More specifically, Plaintiffs alleged that Defendants operated ASD, a premium floral design company headquartered in New York City, and that they were each classified as independent contractors by Defendants, despite exclusively working for Defendants as traditional non-exempt hourly employees.  *See id.*  Plaintiffs further allege that despite working in excess of 40 hours per week, Plaintiffs were only compensated based on their straight time rate, rather than at one and one-half times their straight time rate for overtime worked.  *See id.*  Plaintiffs further alleged that Defendants failed to provide them and Class Members with appropriate pay rate acknowledgement forms and weekly wage statements.  *See id*.

Prior to the commencement of the action, Plaintiffs' counsel undertook significant research concerning Defendants' alleged pay practices, including speaking with numerous former employees of Defendants.  *See* Giaimo Decl., ¶ 5.  Among other things, Plaintiffs' counsel reviewed and analyzed Plaintiffs time and pay records, and performed additional research concerning the underlying merits of Class Members' claims, their duties and hours worked, ASD's timekeeping system and policies, Defendants' anticipated defenses, and the propriety of class and collective certification.  *See id.*

On February 14, 2025, Defendants filed a letter motion for an extension of their time to respond to the Complaint (*see* Dkt. No. 11), which the Court granted on February 18, 2025 (*see* Dkt. No. 12).  Thereafter counsel for Plaintiffs and Defendants began exploring the possibility of

a settlement prior to Defendants' new deadline to respond to the Complaint. *See* Giaimo Decl., ¶ 7. In order to properly evaluate any potential settlement, Plaintiffs' counsel requested that Defendants produce a representative sampling of time and pay records for the proposed class to enable Plaintiffs to analyze Class Members' potential damages if successful on their claims at trial. *See id.* at ¶ 8. Ultimately, after some additional negotiations, Defendants produced time and pay records for 44 prospective class members, consisting of thousands of pages of documents. *See id.* at ¶ 9. Plaintiffs' counsel reviewed and analyzed these records in detail, performing a comprehensive damage analysis based on a number of different possible litigation scenarios, including if Plaintiffs and Class Members were successful on all of their claims at trial. *See id.* at ¶ 10.

Over the course of the next several weeks, counsel for the parties engaged in hard-fought and protracted settlement negotiations. *See id.* at ¶ 11. On March 6, 2025, Defendants filed a second letter motion for a further extension of their time to respond to the Complaint to enable the parties to continue their ongoing settlement dialogue. *See* Dkt. No. 13. The Court granted Defendants' motion, adjourning Defendants' deadline to respond to the Complaint to April 8, 2025, but noted that no further extensions would be granted absent truly extraordinary and unforeseeable circumstances. *See* Dkt. No. 14.

Ultimately, on April 7, 2025, on the eve of Defendants' deadline to respond to the Complaint, the parties reached a settlement in principle. *See id.* at ¶ 14. The parties informed the Court of the settlement in principle later that day. *See* Dkt. No. 15. Thereafter, the parties spent the next several weeks negotiating the terms of the Agreement, which is being presented through this motion for preliminary approval. *See* Giaimo Decl., ¶¶ 14-15.

## SUMMARY OF THE SETTLEMENT TERMS

### A.    The Settlement Fund

Pursuant to the Agreement, Defendants have agreed to pay into a Qualified Settlement Fund ("QSF") the Gross Settlement Amount of $250,000.00. *See* Agreement, § 3.1. From the Gross Settlement Amount will be deducted: (i) settlement administration fees, costs, and expenses, including but not limited to, the Settlement Claim Administrator's fees and costs, and costs of all notices; (ii) Court-approved attorneys' fees and costs for Class Counsel; and (iii) Court-approved Service Awards to Plaintiffs. *Id.* at § 1.16. The amount remaining after these deductions, called the Net Settlement Fund, will be distributed to eligible Class Members. *Id.* at § 3.4.

This is not a claims-made or reversionary settlement. In other words, Class Members do not need to affirmatively opt-in to participate in the Settlement. Moreover, if there are any funds remaining from uncashed settlement checks, those funds will not revert to Defendants, but rather, will be re-distributed to the Class Members and a Court-approved *cy pres* organization. *See id.*

### B.    Class Members

The Litigation is being settled on behalf of 43 Class Members, who are individuals who currently and/or formerly performed work for Defendants on a regular basis, were classified as independent contractors rather than non-exempt hourly employees, were not paid overtime for hours worked in excess of 40 hours per week, and who worked in excess of 40 hours in one or more weeks during the period of January 13, 2019 through the date of the Preliminary Approval Order, which covers the time period for claims arising under both New York state law and the FLSA.

**C.**    **Releases**

All Rule 23 Class Members who do not request to be excluded from the Settlement will release Defendants and Releasees, as defined in Section 1.28 of the Agreement, from all Released State Law Claims, which includes any and all wage and hour claims that have been brought or could have been brought under the NYLL, the New York Minimum Wage Act, and the New York Wage Theft Prevention Act, and or the regulations under such statutes, laws, and wage order, or common law, for work performed at or on behalf of Defendants. *Id.* at § 4.1.

All FLSA Class Members who do not request to be excluded from the Settlement and who endorse his or her Settlement Check will release Defendants and Releasees from all Released Federal Law Claims, which includes all wage and hour claims that have been brought or could have been brought under the FLSA and the regulations thereunder for work performed at or on behalf of Defendants, as well as all Released State Law Claims. *Id.* If an FLSA Class Member does not timely and validly request to be excluded, but fails to endorse his or her Settlement Check, such class member will release the Released State Law Claims, but not the Released Federal Law Claims. *Id.*

**D.**    **Allocation Formula**

If and when the Settlement is preliminarily approved, Defendants shall produce Class Records for all Class Members. *Id.* at § 2.4(A). These Class Records will reflect the number of workweeks in which each individual Class Member worked more than 40 hours from January 13, 2019 through the date of the Preliminary Approval Order ("Applicable Workweeks"). *See id.*; *see also* § 1.5. The Settlement Claims Administrator will then use the Class Records to calculate each Class Member's expected total Settlement Amount based on a pro rata allocation from the Applicable Workweeks per Class Member from the Gross Settlement Amount. *Id.* Each Class

Member will be assigned an individual percentage amount of the Gross Settlement Amount based on their individual number of Applicable Workweeks compared to the total amount of Applicable Workweeks for the entire Class. *Id.* Each Class Member's percentage amount of the Gross Settlement Amount shall be assigned to the Net Settlement Fund in order to compute that Class Member's share of the Net Settlement Fund. *Id.* For example, if there are 100,000 total Applicable Workweeks amongst all Class Members and an individual Class Member is allocated 500 Applicable Workweeks, that Class Member's percentage of the Net Settlement Fund is 0.5%, and the Net Settlement Fund is $100,000, the Class Member's Individual Settlement Amount would be $500. *See id.*

### E.    Attorneys' Fees, Costs, and Service Awards

At the final Fairness Hearing, Class Counsel will ask the Court for an award of attorneys' fees of no more than one-third of the Gross Settlement Amount for the work they performed, the risks they confronted and the result they achieved on behalf of the Class. Class Counsel will also request reimbursement of their litigation costs and expenses to be paid from the Qualified Settlement Fund. In addition, Plaintiffs will apply to the Court for a service award of $10,000 each.

### ARGUMENT

### I.    CLASS ACTION SETTLEMENT PROCEDURE

Federal Rule 23's class action settlement procedure includes three distinct steps: (1) preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval; (2) dissemination of mailed and/or published notice of settlement to all affected class members; and (3) a final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy,

and reasonableness of the settlement may be presented. *See* FED. R. CIV. P. 23(e); *see also Henry v. Little Mint, LLC*, 2014 U.S. Dist. LEXIS 72574, at *13-14 (S.D.N.Y. May 23, 2014).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests.  *See Henry*, 2014 U.S. Dist. LEXIS 72574, at *13.

Through this motion, Plaintiffs request that the Court take the first step—granting preliminary approval of the Agreement, preliminarily certifying the NYLL Class and the FLSA Class for settlement purposes only, approving the proposed Notice, and authorizing the Settlement Claims Administrator to send the proposed Notice to Class Members.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.    Within 10 business days after the Court issues the Preliminary Approval Order, Defendants shall pay the Gross Settlement Amount into the Qualified Settlement Fund.

2.    Within 14 days after the Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator the following information, in electronic form, for all Class Members: name, last known addresses, email addresses, social security numbers, and number of Applicable Workweeks during the relevant period (the "Class List").

3.    Within 14 days after the receipt of the Class List, the Settlement Claims Administrator will mail to all Class Members, *via* First-Class United States Mail, postage prepaid, the Court-approved Notice, email the Notice to all Class Members for whom the Class List includes an email address, and send the Court-approved Text Notice to all Class Members for whom the Class List includes a mobile telephone number.

4.    Class Members who wish to object or opt out must do so within 30 days of the mailing of the Notice (the "Opt-Out Period").

5.    A Fairness Hearing will be held on a date and time convenient for the Court after the Opt-Out Period.  At the Fairness Hearing, the Parties shall request that the Court, among other things: (1) finally certify the NYLL Class and the FLSA Class for purposes of settlement only; (2) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all NYLL Class Members who have not

timely opted out of the Settlement, and binding on all FLSA Class Members who endorse their Settlement Checks; (3) order the Settlement Claims Administrator to distribute Settlement Checks to Class Members who have not opted out, including the Service Awards, if any, to be paid to Chamberlain and Andral, as described in the Agreement; (4) approve Class Counsel's request for attorneys' fees and reimbursement of expenses and order such sums to be paid from the Qualified Settlement Fund to Class Counsel; (5) order the dismissal with prejudice of all Released Class Claims asserted in the Litigation; and (6) order entry of the Final Approval Order in accordance with this Agreement.

6.      Assuming no appeals are taken, within 30 days of the Effective Date, the Settlement Claims Administrator will mail the Settlement Checks and Service Awards ("Mailing Date"). Within 90 days after the Mailing Date, Class Members must endorse or deposit their Settlement Checks ("Acceptance Period"). Within 180 days after the end of the Acceptance Period, half the amount of the uncashed Settlement Checks will be redistributed by the Settlement Claims Administrator to all Class Members who properly cashed their checks during the Acceptance Period ("Paid Class Member") and the remaining half will be deposited into the Reserve Fund maintained by the Settlement Claims Administrator;

7.      Within 5 days after the Court issues the Final Approval Order, Settlement Claims Administrator will mail or wire to Class Counsel its Court-approved attorneys' fees and costs.

8.      Any amount remaining in the Reserve Fund not distributed to Paid Class Members shall be distributed to the Court-approved *cy pres* charitable organization 180 days after the Acceptance Period.

## II.    **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

### A.    **Standard for Preliminary Approval**

The law strongly favors compromise and settlement of class actions "because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hernandez v. Merrill Lynch & Co.*, 2012 U.S. Dist. LEXIS 165771, at *6 (S.D.N.Y. Nov. 15, 2012); *see also Wal-Mart Stores, Inc. v. Visa US.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context").

As amended in 2018, Rule 23(e)(2) requires courts to consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  Prior to 2018, courts in the Second Circuit considered whether a proposed settlement was substantively fair by considering the Grinnell factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*").  As the Rule 23(e)(2) factors add to, rather than displace, the *Grinnell* factors, courts in this Circuit continue to evaluate proposed settlements utilizing the *Grinnell* factors in conjunction with Rule 23(e)(2).  *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019); *see also D'Angelo v. Hunter Bus. Sch., Inc.*, 2023 U.S. Dist. LEXIS 12344, at *24 (E.D.N.Y. Jan. 24, 2023) "Preliminary approval . . . requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (internal citation and quotation marks omitted).  To grant preliminary approval, the Court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n E.R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (internal quotation marks omitted).

Preliminary approval is the first step in the settlement process.  *See Henry*, 2014 U.S. Dist. LEXIS 72574 at *13. It simply allows notice to issue and for Class Members to object to or opt

out of the settlement. *See id.* After notice issues, the Court will be able to evaluate the settlement with the benefit of the Class Members' input. *See id.*

**B.    The Settlement is Fair, Reasonable, and Adequate**

**1.    The Class Representatives and Class Counsel Have Adequately Represented the Class**

As further set forth below, Plaintiffs and Class Counsel are adequate representatives of the proposed settlement class. Plaintiffs' interests are adequately aligned with the Class Members, all of whom assert the same claims and seek the same relief. Moreover, Class Counsel, M&S, is sufficiently experienced and qualified to represent the NYLL Class and FLSA Class, having been appointed as Class Counsel in numerous other similar wage-and-hour class actions. *See* Giaimo Decl., ¶¶ 26-27. This factor, therefore, weighs in favor of granting preliminary approval. *See Restrepo v. Monte's Trattoria, Ltd.*, 2025 U.S. Dist. LEXIS 44003, at *5 (S.D.N.Y. Mar. 7, 2025); *see also Marin v. 310 Bowery Grp. LLC*, 2025 U.S. Dist. LEXIS 53631, at *19 (S.D.N.Y. Mar. 24, 2025).

**2.    The Settlement Was Negotiated at Arms'-Length**

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116; *see also Marin*, 2025 U.S. Dist. LEXIS 53631 at *19. This factor addresses the same substance as the third Grinnell factor (*see D'Angelo v. Hunter Bus. Sch., Inc.*, 2023 U.S. Dist. LEXIS 12344, at *24 (E.D.N.Y Jan. 24, 2023)) and both are discussed herein.

Here, the Settlement was negotiated at all times at arms'-length between sophisticated counsel for both Parties. Class Counsel have substantial experience negotiating class-wide

settlements, and utilized their collective 40+ years of experience in negotiating a favorable settlement on behalf of the Class Members.  To this end, over the course of several weeks, Class Counsel and Defendants' counsel engaged in numerous telephonic and email discussions to narrow the gap between their respective positions.  *See* Giaimo Decl., ¶¶ 7-11.  To aid Class Counsel in this endeavor, Defendants produced the time and pay records in its possession for 44 potential Class Members, which Class Counsel then utilized to derive a number of different damage analyses, including if Plaintiffs were successful on all claims at trial.  *See id.* at ¶ 9.  After significant back-and-forth and hard-fought negotiations, the parties arrived at the Settlement being presented in this motion.  *See id.* at ¶ 11.

Additionally, the Parties exchanged sufficient documentation prior to settlement negotiations to recommend settlement.  There is no particular threshold that discovery must reach in order to demonstrate that discovery has advanced far enough to allow the parties to resolve the case responsibility; rather, the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *See deMunecas v. Bold Food, LLC*, 2010 U.S. Dist. LEXIS 87644, at *14 (S.D.N.Y. Aug. 23, 2010); *see also Lopez v. Pelhman Pharm., Inc.*, 2024 U.S. Dist. LEXIS 11561, at *3 (S.D.N.Y. Jan. 23, 2024) (holding that the parties conducted sufficient discovery even though the case was "at its early stages" and the parties had not "completed fact discovery and plaintiff has not sought conditional certification of a class of similarly situated plaintiffs").

Here, Plaintiffs obtained substantial discovery sufficient to enable Class Counsel and Plaintiffs to negotiate and recommend the Settlement.  To wit, Defendants produced and Class Counsel reviewed thousands of pages of documents consisting of time and pay records for each of the proposed class members.  *See* Giaimo Decl., ¶ 9.  Class Counsel also conferred extensively

with Plaintiffs and other employees of Defendants regarding their work experiences for Defendants and the manner in which Class Members allege they were harmed by virtue of the timekeeping policies challenged in the Litigation. *See id.* at ¶¶ 10-11. Moreover, by reaching a settlement prior to the completion of fact discovery and prior to class certification, the parties "will both avoid the incurrence of additional expenses and any litigation risk that Plaintiff faces in pursuing [their] claim." *See Lopez*, 2024 U.S. Dist. LEXIS 11561 at *3; *see also Yang Zeng v. USA QR Culture Indus. Dev. LLC*, 2023 U.S. Dist. LEXIS 172994, at *3-4 (S.D.N.Y. Sept. 27, 2023).

Accordingly, this factor weighs in favor of approval.

### 3.    The Relief Provided in the Settlement is Adequate

As set forth below, the relief afforded to participating Class Members is substantial and more than adequate.

### a.    Costs, Risks, and Delay of Trial and Appeal

This Rule 23(e)(2) factor "subsumes several *Grinnell* factors," including the complexity, expense and likely duration of litigation (factor 1), the risks of establishing liability (factor 4), the risks of establishing damages (factor 5), and the risks of maintaining the class through trial (factor 6). *See Marin*, 2025 U.S. Dist. LEXIS 53631 at *20; *see also Mikhlin v. Oasmia Pharm. AB*, 2021 U.S. Dist. LEXIS 66719, at *13 (E.D.N.Y. Jan. 6, 2021).

By reaching a settlement prior to seeking collective or class certification and before trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure immediate recovery for the Class Members. Courts favor a settlement that results in "substantial and tangible present recovery, without the attendant risk and delay of trial." *Sykes v. Harris*, 2016 U.S. Dist. LEXIS 74566, at *34 (S.D.N.Y. May 24, 2016). And "[g]iven the complexity of any class action lawsuit

. . . it is reasonable to assume that absent a settlement, continued litigation would have required extensive time and expense." *Marin*, 2025 U.S. Dist. LEXIS 53631 at *20-21 (quotations and citations omitted). That is particularly true in the context of FLSA claims, which are "inherently complex." *See Karic v. Major Auto. Cos.*, 2016 U.S. Dist. LEXIS 57782, at *16 (E.D.N.Y. Apr. 27, 2016) (noting that further litigation "would clearly cause additional expense and delay"); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them"). This case is no exception, with 43 Class Members asserting claims under federal law and New York law related to their alleged misclassification as independent contractors, which inherently involves analysis as to each Class Members' duties and responsibilities during the relevant period.

Assuming the continuation of the Litigation in the normal course absent the Settlement, additional and extensive discovery would be required to establish liability and damages and to support Plaintiffs' anticipated motion for collective certification pursuant to 29 U.S.C. § 216(b) and Plaintiffs' motion for class certification pursuant to Federal Rule 23, including Defendants' opposition thereto. This additional discovery would include further electronic and paper discovery of Defendants' policies, job descriptions, and schedules; depositions of Class Members and Defendants' employees, such as the applicable Class Members' supervisors; and depositions of Defendants' corporate representatives. After completing discovery, the Parties would likely move for summary judgment on the merits of the claims. If the Court were to determine that factual disputes precluded summary judgment, a fact-intensive trial would be necessary. Any judgment would likely be appealed, further extending the Litigation. This Settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner.

Additionally, although Plaintiffs believe their case is strong, it is subject to risk, particularly in light of the defenses articulated by Defendants. "Litigation inherently involves risks." *deMunecas*, 2010 U.S. Dist. LEXIS 87644 at *14. Indeed, the primary purpose of settlement "is to avoid the uncertainty of a trial on the merits." *See id.*; *see also Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 U.S. Dist. LEXIS 144446, at *12 (E.D.N.Y. Oct. 4, 2012). "In considering the risks of establishing liability, the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Marin*, 2025 U.S. Dist. LEXIS 53631 at *21.

Here, continued litigation would involve significant risk as to both liability and damages. While Plaintiffs believe they could ultimately defeat Defendants' defenses and establish liability, this would require significant further factual development and favorable outcomes on Plaintiffs' motion for collective certification, Plaintiffs' motion for class certification, at trial, and on appeal, all of which are inherently uncertain and lengthy. Among other things, Plaintiffs would have to demonstrate that Class Members were similarly situated to Plaintiffs for purposes of class certification, including rebutting Defendants' anticipated defense that Class Members were truly independent contractors with discretion to work elsewhere and with differing job responsibilities and duties. Plaintiffs would also need to litigate whether Defendants' alleged violations were willful and rebut Defendants' arguments regarding the proper measure of damages. The proposed Settlement alleviates this uncertainty.

The risk of obtaining collective and class certification and maintaining it through trial is also present in this case. Indeed, misclassification cases such as this require Plaintiffs to demonstrate that other prospective Class Members, like Plaintiffs, were continuously employed by Defendants, were not employed elsewhere and did not engage in any freelance work, and their

services were integral to Defendants' business.  If the Court were to grant class certification under Federal Rule 23, Defendants would likely challenge that determination, requiring additional briefing and a possible application to the Second Circuit Court of Appeals under Federal Rule 23(f).  In addition, Defendants may have different defenses for certain Class Members based on their particular factual circumstances and work experiences.  Although Class Counsel believes that misclassification cases are routinely certified, there is nonetheless a legitimate risk that the Court would conclude that such individualized factual inquiries preclude class treatment in this case.

In the face of these risks, Plaintiffs and Class Counsel negotiated the Settlement, which provides substantial relief to participating Class Members.  The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum."  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010); *see also Ballinger v. Advance Magazine Publishers, Inc.*, 2014 U.S. Dist. LEXIS 179538, at *7 (S.D.N.Y. Dec. 29, 2014) ("[t]he inquiry with respect to this factor is to see whether the settlement falls below the lowest point in the range of reasonableness") (internal quotation marks and citation omitted).  "Rather, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)) (internal quotation marks omitted).  "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455, n.2 (2d Cir. 1974).

Here, the Settlement provides more than "a fraction of the potential recovery."  *See id.* at 455. Indeed, the $250,000 Gross Settlement Amount provides a substantial recovery to compensate

Class Members for their damages even after deducting the attorneys' fees and expenses requested by Class Counsel.  *See Lesser v. TIAA Bank*, 2020 U.S. Dist. LEXIS 194281, at *5-6 (S.D.N.Y. Oct. 20, 2020) (approving settlement in misclassification case where the overall settlement amount was approximately 25% of the maximum possible recovery); *Felix v. Breakroom Burgers & Tacos*, 2016 U.S. Dist. LEXIS 30050, at *4-5 (S.D.N.Y. Mar. 8, 2016) (approving settlement representing 25% of plaintiff's maximum recovery).  Accordingly, this factor favors approval of the Settlement.

### b. <u>Effectiveness of the Proposed Method of Distributing Relief to the Class</u>

As further discussed below, the Parties' proposed plan for distribution of notice and relief to the Class is designed to be the best practicable under the circumstances.  The Notice is written in plain English and is organized and formatted so as to be as clear as possible.  *See* Giamo Decl., Ex. 2.  Additionally, the Notice describes the terms of the Settlement, informs the Class Members about the process to opt out of the Settlement, informs Class Members about the process to object to the Settlement, informs Class Members about the allocation of attorneys' fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing.  *See Marin*, 2025 U.S. Dist. LEXIS 53631 at *22-23 (approving proposed notice that "describes the terms of the Agreement and provides clear explanations on how to file a claim form, opt out, or object"); *see also Gordon v. Vanda Pharms. Inc.*, 2022 U.S. Dist. LEXIS 169982, at *22-23 (E.D.N.Y. Sept. 15, 2022) (granting preliminary approval of settlement and approving the proposed notice plan, reasoning that the proposed notice "clearly states, in plain language, the nature of the instant litigation and the definition of the class" and provided an explanation of the "potential class member's options and rights in response to the settlement").

### c.  Terms of Any Proposed Attorneys' Fees

The Agreement provides that Class Counsel will petition the Court at the final fairness hearing for an award of attorneys' fees not to exceed one-third of the Gross Settlement Amount, plus reimbursement of reasonable costs and expenses.  While Plaintiffs intend to more fully brief the appropriateness and reasonableness of the anticipated requested fee award, at this early stage it is nonetheless evident that the attorneys' fees to be sought are appropriate.  Indeed, courts in this Circuit and District routinely award attorneys' fees of one-third in wage and hour class action settlements such as this.  *See Marin*, 2025 U.S. Dist. LEXIS 53631 at *24; *Medina v. NYC Harlem Foods Inc.*, 2024 U.S. Dist. LEXIS 10892, at *14 (S.D.N.Y. Jan. 22, 2024) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Azogue v. 16 for 8 Hosp. LLC*, 2016 U.S. Dist. LEXIS 111134, at *17 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit.").

Therefore, although not presently before the Court as Class Counsel have not yet formally moved for an award of attorneys' fees, this factor nonetheless weighs in favor of preliminary approval.

### d.  Any Agreement Required to be Identified Under Rule 23(e)(3)

This factor requires the Court to consider agreements made in connection with the proposed settlement, such as agreements with a claims administrator or even certain release provisions.  *See D'Angelo*, 2023 U.S. Dist. LEXIS 12344, at *3.  As set forth in the Agreement, Class Counsel intend to submit with Plaintiffs' motion for final approval an award of administration fees to be paid out of the Gross Settlement Amount.  The proposed Settlement Claims Administrator is wholly unrelated to Class Counsel or the Plaintiffs and the Court has discretion whether to grant the requested claims administration fees.  Moreover, the release provisions of the Settlement are

directly tied to the specific claims asserted in the Litigation and settlement agreements with similar release language are uniformly approved.  *See, e.g.*, *Farez v. JGR Servs. Inc.*, 2023 U.S. Dist. LEXIS 22701, at *13 (S.D.N.Y. Dec. 21, 2023) (approving settlement where the terms of the release relate specifically to wage and hour issues); *Burgos v. JAJ Cont. Furniture, Inc.*, 2024 U.S. Dist. LEXIS 214187, at *4-5 (S.D.N.Y. Nov. 25, 2024) (approving settlement where the releases were limited to the claims in the action).  Accordingly, this factor weighs in favor of approval.

### 4.    Equitable Treatment of Class Members Relative to the Class is Appropriate

Settlement agreements like the one here, which provide class member awards derived by calculating each class member's share proportional to the services performed, have been found to be an equitable distribution scheme.  *See, e.g.*, *Marin*, 2025 U.S. Dist. LEXIS 53631 at *22 (approving settlement and finding proposed distribution equitable where class members would receive a proportionate share of the settlement based on the hours worked as reflected in defendants' payroll records); *Chang v. Philips Bryant Park LLC*, 2019 U.S. Dist. LEXIS 185297, at *24-25 (S.D.N.Y. Oct. 23, 2019) (approving settlement and finding proposed distribution equitable where the settlement would be allocated proportionately based on the class member's duration of employment during the class period such that those who worked for longer periods of time would receive greater proportionate payments).  Therefore, this factor weighs in favor of approval.[2]

---

[2]    The remaining two *Grinnell* factors, to the extent not directly addressed above, are entirely neutral.  First, it is not entirely clear whether Defendants could withstand a greater judgment.  Defendants operate a floral company in New York, with a relatively limited staff and resources, suggesting Defendants may not have been able to withstand a greater judgment.  And, in any event, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 at n.9 (S.D.N.Y. 2000); *see also Ballinger*, 2014 U.S. Dist. LEXIS 179538 at *6 (recognizing that the defendant's ability to withstand a greater judgment "does not render the proposed settlement unfair").  Second, with respect to the reaction of the class to the settlement, because Class Members have not been notified of the Settlement at this stage, the Court will be in a better position to more fully analyze this factor after the Notice is disseminated and Class

III.    **CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE**

For settlement purposes, Plaintiffs seek class certification pursuant to Federal Rule of Civil Procedure 23(e) of all FLSA Class Members and all NYLL Class Members. As discussed below, in the context of settlement and for purposes of settlement only, the Settlement class meets all the requirements for class certification, and Defendants do not oppose certification for settlement purposes only. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2012).

Settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of the terms of the settlement, and setting the date and time of the final approval hearing. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting the practical purposes of provisionally certifying settlement class). Under Federal Rule 23 a class action may be maintained if all the prongs of Rule 23(a), as well as one of the prongs of Rule 23(b), are met. Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(b)(3) requires the court to find that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

---

Members have had an opportunity to opt out or object to the Settlement. Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

### A.      Numerosity

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted). Here, the proposed Class is comprised of 43 Class Members, which would make joinder impracticable. *See* Fed. R. Civ. P. 23 (a)(l); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). As such, the numerosity threshold is satisfied.

### B.      Commonality

The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the SW. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). Here, Plaintiffs and Class Members all share the same common contention that they were improperly classified by Defendants as independent contractors, and were thereby deprived of the appropriate overtime compensation for hours worked in excess of 40 hours in a week. These common factual and legal questions are sufficient to satisfy commonality under Federal Rule 23(a)(2). *See, e.g.*, *Beckman*, 293 F.R.D. at 473 (finding commonality met because the plaintiffs and class members "share common issues of fact and law, including whether Defendant misclassified them as exempt employees, failed to pay them overtime wages in violation of stage wage and hour laws, and failed to keep accurate records of time worked."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where plaintiffs claimed that defendant had a policy of not paying class members overtime pay).

### C.    <u>Typicality</u>

Federal Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005). Typicality is often satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, Plaintiffs and each of the Class Members worked for Defendants; allege the same injury (misclassification as exempt); and seek the same relief (unpaid overtime wages). Thus, Plaintiffs and Class Members claim to have suffered the same or similar injuries and rely on the same legal theories in seeking relief. As such, the typicality requirement is satisfied.

### D.    <u>Adequacy of the Named Plaintiffs and Class Counsel</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). The adequacy requirement exists to ensure that the named representatives will "have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998).

The Proposed Class Representatives do not have interests that are antagonistic to or at odds with the Class Members' interests. *See C.K. v. McDonald*, 2024 U.S. Dist. LEXIS 30617, at *17-18 (E.D.N.Y. Feb. 22, 2024) (adequacy satisfied where, *inter alia*, there was no evidence that the

named plaintiffs' and class members' interests were at odds).  Moreover, the Proposed Class Representatives have selected Class Counsel capable of adequately representing the Class's interests.  Indeed, M&S has been appointed lead counsel in many wage and hour class actions over the years.  *See* Giaimo Decl., ¶ 27.  Accordingly, the adequacy requirement is readily satisfied.

### E.    Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016).  For the purposes of settlement, these requirements are met in this case.

#### 1.    Common Questions Predominate

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Am. Intern. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (internal quotation marks and citations omitted).  To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation omitted).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001).  Ultimately, "[w]here plaintiffs are unified by a common legal theory . . . and by

common facts, the predominance requirement is satisfied." *Hernandez*, 306 F.R.D. at 98 (citing *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005)).

Here, the predominating focus of the Litigation at trial would be on ASD's timekeeping and pay policies and practices, particularly whether Defendants engaged in a common practice to deny Class Members overtime pay. Numerous courts have found predominance in virtually identical circumstances. *See, e.g.*, *Beckman*, 293 F.R.D. at 474 (finding that plaintiffs' common factual allegations and common legal theory that defendant violated applicable law by misclassifying plaintiffs and failing to pay them premium overtime hours predominated over any factual or legal variations among class members); *Hernandez*, 306 F.R.D. at 98 ("[t]he common issues that unite plaintiffs and the class – defendants' practices of failing to pay minimum wage and overtime – predominate and are subject to the same generalized proof because plaintiffs and the class members shared similar duties and were subject to the same practices.").

### 2.    A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis examines whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). In determining whether superiority is established, the Court should consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Here, potential recovery for many Class Members, especially those who worked for Defendants for only a limited period of time, is comparatively modest. Additionally, for the limited

purpose of settlement only, employing the class device to concentrate litigation in this Court will achieve economies of scale, will conserve the resources of the judicial system, and will avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims. *See Beckman*, 293 F.R.D. at 473 ("Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually"); *see also Reyes v. Altamarea Grp.*, LLC, 2011 U.S. Dist. LEXIS 115984, at *7-8 (S.D.N.Y. Aug. 16, 2011) (same).

## IV.  <u>M&S SHOULD BE APPOINTED AS CLASS COUNSEL</u>

Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(l)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(l)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." FED. R. CIV. P. 23(g) advisory committee's note.

M&S satisfies these criteria. The firm has done substantial work identifying, investigating, prosecuting, negotiating, and settling Plaintiffs' and Class Members' claims. It has substantial experience prosecuting and settling employment class actions, including wage and hour class actions. *See* Giaimo Decl., ¶¶ 26-27. Further, courts have repeatedly found M&S to be adequate

class counsel in wage and hour class actions such as this. *See id.* Accordingly, M&S respectfully requests that it be appointed counsel for the Class pursuant to Federal Rule 23(g).

## V.    THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

Pursuant to Rule 23(c)(2)(B), the Notice must provide: the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies each of these requirements. The Notice is written in plain English and is organized and formatted so as to be as clear as possible. *See* Giaimo Decl., Ex. 2. Additionally, the Notice describes the terms of the Settlement, informs the Class Members about the process to opt out of the Settlement, informs Class Members about the allocation of attorneys' fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing. *See* Giaimo Decl., Ex. 2; *see also Marin*, 2025 U.S. Dist. LEXIS 53631 at *30-31 (approving proposed notice that provided a general description of the claims and defenses, who is included in the settlement class, how class members' proportionate shares of the net settlement fund would be calculated, and how to opt out or object).

The Agreement provides that the Settlement Claims Administrator will mail the Court-approved Notice *via* First Class United States Mail (and via email where applicable), within 14 days of receipt of the Class List. *See* Agreement, § 2.4(B). The Settlement Claims Administrator

will take reasonable steps to obtain the correct addresses of any Class Member whose Notice is returned as undeliverable and will attempt a re-mailing. *Id.*, § 2.4(C). Accordingly, the Notice satisfies each of the requirements of Rule 23(c)(2)(B).

## <u>CONCLUSION</u>

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for preliminary approval of the Settlement on the terms set forth in the parties' Agreement and enter the Proposed Preliminary Approval Order.

Dated: New York, New York
   May 30, 2025      McLAUGHLIN & STERN, LLP

               By: *<u>/s/ Jason S. Giaimo</u>*
                 Jason S. Giaimo
                Brett R. Gallaway
             260 Madison Avenue
             New York, New York 10016
             Tel.: (212) 448-1100
             jgiaimo@mclaughlinstern.com
             bgallaway@mclaughlinstern.com
             *Attorneys for Plaintiffs and Proposed Class Counsel*