UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEAN CHAMBERLAIN and PAMELA ANDRAL,
*on behalf of themselves and all others similarly situated*,

Plaintiffs,

-against-

ANGEL SALAZAR DESIGN LLC and ANGEL SALAZAR,

Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/9/2026

1:25-cv-274 (MKV)

OPINION & ORDER DENYING
MOTION TO CERTIFY CLASS
AND APPROVE SETTLEMENT

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Sean Chamberlain ("Chamberlain") and Pamela Andral ("Andral") filed a putative collective and class action lawsuit against Defendants Angel Salazar Design LLC ("ASD") and Angel Salazar, asserting claims for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") [ECF No. 1 (the "Complaint" or "Compl.")]. ASD is a "a premium floral design company specializing in luxury, hospitality, and special events." Compl. ¶ 15. "Salazar is the founder, owner, CEO, and Principal Floral Designer of ASD." *Id.* ¶ 16. Chamberlain is a former "Studio Manager" whose responsibilities at ASD Plaintiffs never describe. *Id.* ¶ 12. Andral, who remained employed by ASD when the Complaint was filed, was an "Administrative Specialist" whose "primary job responsibilities included, among other things consolidating Expensify accounts, creating invoices and cost proposals for clients, and assisting with human resource functions." *Id.* ¶¶ 13, 32.

Chamberlain and Andral purport to represent a class of non-exempt hourly employees who allegedly were misclassified as independent contractors. *See Id.* ¶¶ 1, 43. Before the Court is Plaintiffs' unopposed motion for class certification and settlement approval [ECF No. 19 ("Mot."),

1

20 ("Mem.")]. However, as explained below, Plaintiffs fail to demonstrate that they were similarly situated to each other, let alone a definite class of misclassified employees, as required for class and conditional certification under Rule 23 of the Federal Rules of Civil Procedure and the FLSA. As such, and for all of the reasons set forth below, the motion is DENIED.

## I.      BACKGROUND

### A. The Complaint and the Parties

In early 2025, Plaintiffs filed the Complaint, asserting claims for violations of: (1) the FLSA overtime pay requirement, on behalf of Plaintiffs and a purported "FLSA Collective Class"; (2) the NYLL overtime pay requirement, on behalf of Plaintiffs and a purported Rule 23 "New York Class"; (3) the NYLL notice and recordkeeping requirements, on behalf of Plaintiffs and the purported "New York Class"; (4) the NYLL wage statement requirement, on behalf of Plaintiffs and the purported "New York Class"; and (5) the NYLL provision requiring timely payment of wages. Compl. ¶¶ 77–104.

### 1. Chamberlain

In the Complaint, Plaintiffs allege that Chamberlain worked for Defendants as a "Studio Manager" from April 2024 through September 15, 2024. Compl. ¶¶ 13, 18. The Complaint asserts, in conclusory fashion, that "Chamberlain could not exercise any independent discretion or control over her job duties and responsibilities." *Id.* ¶ 22. However, the Complaint never provides any description of her job duties and responsibilities.

Plaintiffs allege that Chamberlain was "informed at the time of her hiring that she would work as an independent contractor during an initial 3-month 'probationary period,' after which she would be transitioned to a full-time non-exempt hourly employee." Compl. ¶ 18. Plaintiffs further allege that, after the first two weeks of Chamberlain's employment, Defendants raised her pay

from $28.50 per hour to $32.50 per hour. *Id.* "After the 'probationary period' concluded, [her] hourly rate was increased to $35.00 per hour." *Id.* However, Plaintiffs allege, Chamberlain was "never formally hired" as a non-exempt hourly employee. *Id.* Rather, Plaintiffs contend, she was, "at all time throughout her employment, misclassified as an independent contractor." *Id.*

Plaintiffs allege that Chamberlain's "scheduled hours were 8AM to 4PM," Monday through Friday. Compl. ¶ 19. However, Plaintiffs allege, Chamberlain "regularly and routinely worked in excess of her scheduled hours without additional overtime compensation for the hours worked in excess of 40 hours per week." *Id.* Instead, she "was simply paid her regular hourly rate for all hours worked." *Id.* ¶ 21.

Plaintiffs further allege that Chamberlain "would often go days or even weeks without being paid." *Id.* ¶ 24. According to Plaintiffs, "Defendants directed Chamberlain to send 'invoices' for the hours she worked for Defendants every two weeks." *Id.* ¶ 23. Plaintiffs allege that Chamberlain submitted such invoices as directed, but "Defendants did not pay Chamberlain in a timely manner." *Id.*

### 2. Andral

According to the Complaint, Defendants hired Andral "on or about September 7, 2022 as an Administrative Specialist as part of the Administrative Support Team." Comp. ¶ 13; *see id.* ¶ 27. As of the filing of the Complaint, Andral was "a current Hourly Employee of Defendants." *Id.* ¶ 13. Plaintiffs allege that "Andral's primary job responsibilities included, among other things, consolidating Expensify accounts, creating invoices and cost proposals for clients, and assisting with human resource functions such as ensuring that all employees executed a non-disclosure agreement and received their appropriate tax forms." *Id.* ¶ 32. Plaintiffs assert that Andral "had no control or discretion over her job responsibilities or functions." *Id.* ¶ 28.

Plaintiffs allege that, for approximately the first year of her employment only, Andral "was classified by Defendants as an independent contractor." Compl. ¶ 28. During this year, according to Plaintiffs, Andral initially was paid $24.00 per hour. *Id.* ¶ 27. Approximately two months after hiring Andral, Defendants raised her pay to $26.00 per hour. *Id.* Defendants later raised her pay again to $28.00 per hour. *Id.*

Plaintiffs allege that, during the first year of her employment, Andral "was scheduled to work Monday through Friday, either from 5AM to 1PM or 6AM to 2PM." Compl. ¶ 29. However, Plaintiffs allege, Andral "worked in excess of her scheduled hours . . . nearly every single week." *Id.* ¶ 29. According to Plaintiffs, "Andral did not receive overtime compensation for any of the hours she worked in excess of 40 hours per week, instead receiving compensation at her regular rate of pay." *Id.*; *see id.* ¶ 30.

Thereafter, "in or about September 2023," Defendants "formally hired Andral as an hourly employee and placed her on regular payroll." Compl. ¶ 35. Plaintiffs allege that, at this point, "Defendants directed Andral not to perform any work in excess of 40 hours per week as Defendants did not want to pay Andral any overtime," and she ceased working in excess of 40 hours per week. *Id.*; *id.* ¶ 36. Plaintiffs further allege that Andral "continued to perform the same job functions as when she was classified (improperly) an independent contractor." *Id.* ¶ 37.

Unlike with respect to Chamberlain, the Complaint does not specifically allege that Andral submitted invoices but was not paid in a timely manner when she was allegedly classified as an independent contractor. Rather, the Complaint simply asserts, in wholly conclusory fashion, that Defendants "failed to compensate *Plaintiffs* in a timely manner as required by NYLL § 198." Compl. ¶ 40 (emphasis added). The Complaint also broadly asserts that Defendants "failed to provide Plaintiffs with proper pay rate acknowledgement forms at the commencement of their

4

employment and accurate wage statements with every payment of wages in violation of NYLL §§ 195.1 and 195.3." *Id.* ¶ 39.

### 3. Other Alleged Hourly Employees

Plaintiffs allege in conclusory fashion that "other Hourly Employees, just like Plaintiffs, were hired by Defendants as hourly employees, but were intentionally misclassified as independent contractors." Compl. ¶ 43. Plaintiffs assert that such alleged other "Hourly Employees were unable to exercise their own business judgment or discretion in carrying out their job duties, were unable to set their own work schedules, were unable to set their own hourly rates and/or pricing, were unable to hire or fire other employees, were unable to discipline other employees, and were unable to pick and choose which customers they would work with." *Id.* ¶ 45. The Complaint does not contain any allegations about the alleged duties of such alleged employees.

## B. Procedural History

After Plaintiffs filed the Complaint, Defendants received several extensions of time to respond to the Complaint [ECF Nos. 12, 14]. Before Defendants filed an answer or otherwise responded to the Complaint, the parties informed the Court that they had reached a settlement in principle [ECF No. 15].

Thereafter, Plaintiffs filed an unopposed motion for preliminary approval of a class action settlement, conditional certification of the purported settlement class, appointment of Plaintiffs' counsel as class counsel, and approval of a proposed notice to purported class members [ECF No. 19 (the "Motion")]. In support of that motion, Plaintiffs filed a memorandum of law, a declaration of counsel, the proposed settlement agreement, a proposed notice to purported class members, and a proposed order granting the motion [ECF Nos. 19-1 ("Giaimo Decl."), 19-2 ("Proposed Settlement"), 19-3 ("Notice"), 19-4, 20 ("Mem.")].

Conspicuously absent from these materials are sworn declarations from Chamberlain and Andral attesting to facts alleged in the Complaint, describing their respective job responsibilities, and otherwise addressing their adequacy to represent the purported class. Plaintiffs also failed to submit any other evidence in support of their argument for certification.

## C. The Proposed Settlement

The Proposed Settlement defines "Class Members" as "Plaintiffs and all members of the FLSA Class and the Rule 23 Class." Proposed Settlement ¶ 1.4. The "FLSA Class Members" are defined as "any and all current and former individuals [sic] who performed work for Defendants on a regular basis and were classified as independent contractors and who worked in excess of 40 hours in a particular week during the period from January 13, 2022 through the date of the Preliminary Approval Order." *Id*. ¶ 1.12. The "Rule 23 Class Members" are defined as "any and all current and former individuals [sic] who performed work for Defendants on a regular basis, were classified as independent contractors rather than non-exempt hourly employees, were not paid overtime for hours worked in excess of 40 hours per week, and who worked in excess of 40 hours in a particular week during the period from January 13, 2019 through the date of the Preliminary Approval Order." Proposed Settlement ¶ 1.30. Nowhere in these definitions is there a proviso that members of the purported class were *improperly* classified as exempt employees under governing law, had common job responsibilities, or otherwise fall into a class of employees with definite boundaries for purposes of certification.

The Proposed Settlement details the "Gross Settlement Amount" ($250,000), the process for obtaining preliminary and final approval, the retention of a settlement claims administrator, notice to class members, and various other points not relevant to this decision.

## II.    DISCUSSION

"Because FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the NYLL claims as a class action." *Shahriar v. Smith & Wollensky Rest. Grp.*, Inc., 659 F.3d 234, 244 (2d Cir. 2011). "In this hybrid [putative] class and collective action," Plaintiffs claim that they and other current and former employees "worked overtime, they were legally entitled under state and federal law to overtime pay, and [ASD and Salazar] denied them such payment." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2020). As such, a key issue is whether Defendants "improperly classified plaintiffs" and a discernible class of other current and former employees "as exempt employees under Labor Department guidelines and parallel state law." *Id*.

"Unlike most settlements, class action settlements" and settlements of FLSA claims "require court approval." *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 117 (2d Cir. 2025); *see Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). With respect to a proposed class action settlement, a district court must "scrutiniz[e]" the proposal and "must act as a 'protector of the rights'" of the absent individuals for whom "the parties that are present and settling the case" purport to act. *Kurtz*, 142 F.4th at 117 (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 222 (2d Cir. 1987)). As such, Rule 23(e) requires judicial approval for any class action settlement. *See* Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), before giving notice of a proposed settlement agreement to putative class members, "[t]he *parties must provide the court with information sufficient to enable it to determine*" that "the court will likely" approve

the proposed settlement under Rule 23(e)(2) "**and . . . certify the class**" for that purpose.  *Id.* at 23(e)(1)(B)(i)–(ii) (emphases added).

In cases discussing whether to grant preliminary approval for a class action settlement, courts often focus on whether the proposal is "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Kurtz*, 142 F.4th at 117–121; *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 178 (S.D.N.Y. 2014). However, such cases presuppose that the movants meet the prerequisites for class certification. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016) ("Adequacy must be determined independently of the general fairness review of the settlement").  Here, Plaintiffs have entirely failed to "provide the court with information sufficient to enable" the Court "to determine" that the Court is "likely" to "certify the class" that Plaintiffs have defined.  Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii).

Under Rule 23(a) of the Federal Rules of Civil Procedure, a Court may certify a proposed class only if the party moving for certification demonstrates that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Plaintiffs have entirely failed to make threshold showings of commonality, typicality, and adequacy.

As noted above, Plaintiffs' overtime claims turn on whether Defendants misclassified them as exempt employees.  As the Second Circuit has explained in the context of affirming the denial of a motion for class certification, the exemption inquiry "is a mixed question of law and fact," which requires "examination of the duties that the employee actually performs" and "evidence

8

tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria." *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) (internal brackets, quotation marks, and citations omitted); *see Scott*, 954 F.3d at 511. Here, ***Plaintiffs have nowhere even provided any description of Chamberlain's duties.*** Indeed, to the Court's astonishment, Plaintiffs failed to submit affidavits from Chamberlain and Andral in support of their Motion. Plaintiffs also declined to offer allegations, let alone evidence, related to the job responsibilities of Defendants' other employees. The Court, therefore, has absolutely no basis to conclude that Chamberlain and Andral held "jobs [that] were similar" to ***each other's, let alone similar to the jobs of the purported class of other employees***, "in ways material to the establishment of the exemption criteria." *Myers*, 624 F.3d at 549.

Furthermore, Plaintiffs' definition of the purported class does nothing to exclude employees who may have been properly classified as exempt. *See* Proposed Settlement ¶¶ 1.4; 1.12; 1.30. Instead, Plaintiffs' definition sweeps broadly to include ***all*** "current and former individuals [sic]" who were classified as independent contractors and worked more than 40 hours. *See id.* However, Plaintiffs offer the Court no evidence or argument to support the conclusion that every employee Defendant has ever classified as an independent contractor was, in reality, a non-exempt hourly employee.

Given Plaintiffs' total failure to demonstrate that Chamberlain, Andral, and the alleged members of the purported class have held similar jobs, the Court obviously cannot find that Plaintiffs adequately represent the supposed class under either Rule 23(a) or Rule 23(e). *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d at 232. The Court likewise cannot find commonality and typicality. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 & n.5 (2011). Indeed, Plaintiffs fail to meet the "threshold" requirement of defining a

class with "definite boundaries" for purposes of Rule 23. *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017). Plaintiffs fail even to "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law" for purposes of conditional certification of a collective action, since Plaintiffs make no showing whatsoever that they were "similarly situated with respect to their job requirements." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (internal quotation marks and citations omitted). As such, the parties' Proposed Settlement cannot be approved, and the Court need not proceed to a "general fairness review of the settlement" under either Rule 23 or *Cheeks* and its progeny. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d at 232; *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628 (1997).

### III.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification and settlement approval [ECF No. 19] is DENIED. The Clerk of Court respectfully is requested to terminate the motions pending at docket entries 19 and 22.

The parties shall file a joint letter by March 2, 2026 advising the Court how they propose to proceed in this action. **The parties are on notice that failure to comply with court orders and all applicable rules, and expeditiously to move this case toward resolution, may result in sanctions, including: monetary penalties on counsel and the parties themselves; preclusion of claims, defenses, evidence, and motion practice; and the case-terminating sanctions of dismissal for failure to prosecute and default judgment.**

**SO ORDERED.**

Date:  **February 9, 2026**
       **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

10